Andrew M. MOORE, Appellant,

v.

SABINE NATIONAL BANK OF PORT
ARTHUR, Texas, Appellee.

No. 12289.

Court of Civil Appeals of Texas,
Austin.

July 16, 1975.

Rehearing Denied Sept. 24, 1975.

James G. Boyle, Boyle & Yeager, Paul Waggoner Jones, Jr., Austin, for appellant.

William F. Turman, Miller, Autry, Gotcher & Turman, Austin, for appellee.

PHILLIPS, Chief Justice.

The primary problems in this appeal concern the construction of the penalty provisions of the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. Art. 5069–8.01 and Art. 5069–8.02.

On May 8, 1972, appellant Andrew M. Moore, entered into a retail installment contract for the purchase of a mobile home from Oak Hill Mobile Homes. The contract obligated appellant to pay the sum of $11,242.80, which was to be paid in 120 consecutive monthly installments of $93.69 each, beginning June 15, 1972. The total sum was comprised of the amount financed, $6,425.00, and a finance charge (time-price differential) of $4,817.80. The amount of finance charge (time-price differential) was within that permitted by Art. 5069–7.03.

Appellee, Sabine National Bank of Port Arthur, Texas, purchased the installment contract from Oak Hill Mobile Homes. Some time before March 23, 1973, appellant defaulted on the monthly payments, and on that date appellee sent a notice of acceleration to appellant and made demand upon him for total amount due under the contract.

In March of 1974, appellee sued appellant in the district court of Travis County. In its original petition appellee alleged that the sum of "$11,842.96" was due and payable, and prayed, in part, that appellee show cause why a writ of sequestration should not issue. A few days after filing its petition, appellee caused to be filed its affidavit for sequestration in which it was declared that appellant was indebted to appellee in the sum of "$11,842.96."

In the trial court appellant specially pleaded that he was entitled to setoff for the total amount of his down payment and the number of monthly payments which he had paid. That pleading also included a cross-action against appellee averring in part (1) that appellee, by not rebating any unearned finance charge, had charged in excess of double the amount of time-price differential authorized by the Texas Consumer Credit Code, and (2) that appellee in violation of the Code had failed to disclose that the physical damage insurance was not sold at rates fixed or approved by the State Board of Insurance. Appellant prayed for a recovery in the terms of Art. 5069–8.02 for the amount of twice the time-differential, $9,635.60, and for $6,425.00 as an additional penalty because appellant had charged in excess of double the authorized rate of time-price differential, and for attorney's fees.

After trial, the court, sitting without a jury, entered judgment in favor of appellee in the sum of $6,017.38, for attorney's fees of $902.61, and for foreclosure of appellee's security interest in the mobile home. Appellant does not complain of that part of

the judgment. The judgment provided further that appellant take nothing by reason of his cross-action.

Upon request, the court filed findings of fact and conclusions of law. Among the findings of importance to this appeal are that appellee matured the contract on March 27, 1973 and at that time appellant was entitled to a rebate of the unearned finance charge of $3,957.89. The court found further that appellee ". . . never intended to charge or collect any unearned finance charge," and that it was the regular business practice of appellee to rebate and figure unearned interest either after repossession of the collateral or upon final judgment. The court concluded, among other things, that the statements contained in appellee's notice of intention to repossess, its original petition and its sequestration affidavit did ". . . not constitute *charging* of unearned time-price differential or finance charge." (Emphasis added)

■ Appellant's brief contains six points of error. Points one and two attack the court's conclusion that the statements contained in appellee's notice of intention to repossess, in its original petition, and in its sequestration affidavit did not constitute *charging* of unearned time-price differential or finance charge. We agree with appellant's position that, as a matter of law, such actions on the part of appellee constituted a "charging" of unearned time-price differential.

In 1967 the legislature enacted the Texas Consumer Credit Code, Tex.Rev.Civ.Stat. Ann. Art. 5069–1.01 *et seq.* Prior to the enactment of the Code, credit sales, such as motor vehicle transactions, were not subject to any limitation as to the amount of time-price differential or other charges which might be imposed upon the purchaser. In response to the need for regulation in this area of commerce, Chapters 6 and 7 of the Code were enacted. Chapter 6 governs retail installment sales, and Chapter 7 regulates motor vehicle installment sales. Articles 8.01 and 8.02 of the Code provide severe penalties for violations of Chapters 6 and 7 and the chapters regulating loan transactions.

Article 5069–8.01 provides:

"Any person who violates this Subtitle by contracting for, *charging* or receiving interest, time price differential or other charges which are greater than the amount authorized by this Subtitle, or by failing to perform any duty specifically imposed on him by any provision of this Subtitle, shall forfeit to the obligor twice the amount of interest or time price differential and default and deferment charges contracted for, charged or received, and reasonable attorneys' fees fixed by the court, provided that there shall be no penalty for a violation which results from an accidental and bona fide error." (Emphasis added)

Article 5069–8.02 provides in part:

"Any person who violates this Subtitle by contracting for, *charging* or receiving interest, time price differential or other charges which are in the aggregate in excess of double the total amount of interest, time price differential and other charge authorized by this Subtitle shall forfeit to the obligor as an additional penalty all principal or principal balance, as well as all interest or time price differential, and all other charges, and shall pay reasonable attorneys' fees actually incurred by the obligor in enforcing the provisions of this Article . . . ." (Emphasis added)

Appellant says that the statements in appellee's notice of intention to repossess, its original petition, and its sequestration affidavit constituted a "charge" as contemplated by Art. 5069–8.01 and 8.02.

In response appellee argues that the term, "charging," as used in Art. 5069–8.01 and 8.02 is dependent upon the excessive charge having been *contracted for* in the installment contract or upon the excessive charge having been *received* before the penalties in those articles may be invoked.

Appellee relies upon *Greever v. Persky*, 140 Tex. 64, 165 S.W.2d 709 (1942), and *Mays v. Pierce*, 154 Tex. 489, 281 S.W.2d 79 (1955). Appellee points to the fact that the language of Art. 5069–8.01 is the same as that of the general usury statute, Art. 5069–1.06. The predecessor of Art. 5069–1.06 was Tex. Rev.Civ.Stat.Ann. Art. 5073. Article 5073 described usury in terms of "shall have received or collected upon any contract." Article 5069–1.06 (and Art. 5069–8.01) provides "contracted for, charged or received." Appellee submits that the addition of the word, "charged" and the deletion of the word, "collect," in Art. 5069–1.06 contemplated a situation wherein the excessive charge was actually *contracted for*, or "charged," though not collected by the lender. Appellee says, in conclusion, that the addition of the word, "charged" in Art. 5069–1.06 was not intended to change a legal contract into one tainted by usury by way of a subsequent unilateral demand of the lender which called for an amount in excess of that called for by the installment contract.

As may be seen, the statutory penalty set forth in Article 5069–8.01 and 8.02 is invoked when excessive interest time-price differential or other charges have been contracted for, *charged*, or received. To accept appellee's construction of Article 5069–8.01 and 8.02 would, in our opinion, render meaningless the word "charging."

In construing a statute it is presumed that every word has been used for a purpose. A cardinal rule of statutory construction requires that each sentence, clause, phrase, and word be given effect if possible. *Eddins-Walcher Butane Company v. Calvert*, 156 Tex. 587, 298 S.W.2d 93 (1957).

The terms, "charged" or "charge" have received some judicial construction. In *Monroe Loan Society of Pennsylvania v. Morello*, 160 Pa.Super. 418, 51 A.2d 347 (1947), it was held that a charge could be "the debiting of an amount due or more certainly, an act by the promisee constitut-ing or implying a demand for its payment, e. g., the inclusion in a statement of indebtedness submitted to the debtor." Also see: *Credit Finance Service, Inc. v. Able*, 127 A.2d 396 (D.C.Mun.Ct.App.1956), and *Reese v. Termplan, Inc., Bolton*, 125 Ga.App. 473, 188 S.E.2d 177 (1972). In *Credit Finance Service v. Able, supra*, the court, in construing a Maryland statute regulating small loans (Art. 58A, § 16(d)), stated: "The statute invalidates the loan contract if excessive interest is *'charged, contracted for or received.'* It is clear that unlawful interest charges had been entered on the company's records and on the borrowers' loan book. * * * *Unlike some general usury laws this statute does not require that unlawful interest be actually paid and received in order to constitute a violation.*" (Emphasis added)

We observe that some other jurisdictions have adopted consumer protection laws which, likewise, have added the concept of "charged" to the traditional requirements of "contracted for" or "collected" (sometimes "received") found in general usury laws. A non-exhaustive list includes: Annotated Code of Maryland, Art. 58A § 16(d); Georgia Code Annotated, § 96–903(d); Hawaii Revised Statutes, § 476–33; 121½ Illinois Annotated Statutes (Supp.), § 581; Ohio Revised Code, § 1317.06; Annotated Laws of Massachusetts (Supp.), c. 255D, § 11(B); New Mexico Statutes, 50–16–3; and Florida Statutes Annotated, § 520.34.

An examination of appellee's notice of intention to repossess, its original petition, and its sequestration affidavit, in our opinion, shows a demand by appellee upon appellant to pay the "total of payments," a sum of $11,242.80, which includes all of the finance charge, both earned and unearned.

The evidence shows that on the dates that appellee demanded payment of the entire contract the unearned amount of the finance charge was approximately $3,814.59. The evidence further discloses that the interest being charged appellant

varied from an annual percentage rate of 25.68% to 128.59% depending on factors not material here. The legal charge applicable to appellant's contract was 12.40%. As is seen, the evidence demonstrates that appellant was charged an amount exceeding twice the legal rate of interest applicable to the contract.

Appellant has three points of error concerning whether appellee's charging the excessive time-price differential was the result of an accidental or *bona fide* error. Point of error three is that the court did not find facts sufficient to sustain the judgment on the basis that the charging of the excessive time-price differential was the result of an accidental or *bona fide* error. Points of error four and five are that there was no evidence, or insufficient evidence, that the charging of an excessive time-price differential was the result of an accidental or *bona fide* error.

■ Art. 5069–8.01 provides that no penalty lies against any person who charges excessive time-price differential if such act resulted "from an accidental and bona fide error." Appellee had the burden to plead accidental or *bona fide* error, Tex.R.Civ.P. 94, and, likewise, to prove that defense. *McDonald v. Savoy*, 501 S.W.2d 400 (Tex. Civ.App.1973, no writ). The only finding of the trial court which could relate to that defense reads, "Plaintiff, Cross-Defendant [appellee] never intended to charge or collect any unearned finance charge."

■ If appellee intended to do the acts which constituted the charging of the excessive time-price differential, then those acts were not the result of an accidental or *bona fide* error. See *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974). A creditor may not excuse its violation of the statute by a showing that it did not intend to violate the act. See *Townsend v. Adler*, 510 S.W.2d 175 (Tex.Civ.App. 1974, no writ),[1] *Haynes v. Logan Furniture Mart, Inc., supra.*

■ Practically all of the evidence bearing upon accidental or *bona fide* error came from the testimony of Charles Wetherbee, attorney for appellee's collection agent, upon examination by appellant's counsel. Wetherbee admitted that he had examined and read the appellee's affidavit for sequestration before he had sworn to it. Though Wetherbee recognized the figure in the sequestration affidavit, $11,842.96, to be the same as that in the installment contract, his response was that the appearance of that sum in the affidavit was, "As best I recall, it is just another, you know, honest mistake on this thing."

In reviewing appellant's no evidence point, we view the evidence in its most favorable light in support of the finding of accidental and *bona fide* error, considering only the evidence and the inferences which support the finding and rejecting the evidence and inferences which are contrary to the finding. *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696 (1914). Following the rule stated, we conclude that the "honest mistake" testimony of Wetherbee was some evidence of accidental and *bona fide* error with respect to the "charge" represented by the sequestration affidavit.

■ The notice of intention to repossess and appellee's original petition were also charges within the purview of Art. 5069–8.-01. As there was no evidence to show that those charges resulted from an accidental and *bona fide* error, we will sustain point of error four.

■ Appellant's final point is that the district court erred in finding that the County Mutual Insurance was sold to appellant at rates fixed or approved by the State Board of Insurance. We need not pass upon the point for the reason that an examination of the prayer for relief in appellant's trial pleading shows that appellant did not pray for the assessment of penalties for that violation.

---

1. *Townsend v. Adler* did not involve Art. 5069–8.01, but instead Art. 5069–1.06. The provisions in both statutes are substantially the same.

Appellant did not attack that part of the judgment awarding appellee $6,017.38 and attorneys' fees of $902.61 and foreclosing appellee's security interest in the mobile home. Accordingly, that part of the judgment is affirmed. The part of the judgment ordering that appellant take nothing by reason of its cross-action against appellee is reversed and judgment is here rendered for appellant for penalties pursuant to Article 5069–8.01 and 8.02 in the total sum of $16,060.60. Appellant's cause of action for attorney's fees is ordered severed and that cause is remanded to the district court for a new trial. Appellant shall pay one-half of the costs of court and the appellee shall pay the remaining one-half of the costs of court.

Affirmed in part, reversed and rendered in part and reversed and remanded in part.