Henry CHAVEZ et ux., Appellants,

v.

AETNA FINANCE COMPANY, Appellee.

No. 15658.

Court of Civil Appeals of Texas,
San Antonio.

May 25, 1977.

Rehearing Denied July 6, 1977.

James D. Krause, San Antonio, for Legal Aid, for appellants.

Durward D. Moore, Dallas, for appellee.

## PER CURIAM.

This is a suit on a promissory note in which the makers of the note, by way of counterclaim, seek recovery of penalties from the holder of the note for alleged violations of the usury statutes and of Federal and State truth-in-lending statutes and regulations.

Plaintiff, Aetna Finance Company, sued to recover $503.05, allegedly the unpaid balance on a note executed by defendants, Henry R. Chavez and wife, Mary Chavez. Defendants appeal from a judgment granting recovery to plaintiff on the note, plus attorney's fees, and denying defendants' recovery on their counterclaim.

The note in question, in the principal sum of $625.00, was executed by defendants on March 23, 1973. This amount represented the amount of cash advance made by plaintiff to defendants ($482.14), plus interest in the sum of $142.86. The note was payable in 25 monthly installments of $25.00 each, with the first installment payable on April 23, 1973.

Under Art. 5069–3.15(1) and (2), Tex.Rev. Civ.Stat.Ann. (1971), the maker of a loan of the type involved in this case is permitted to charge interest at the rate of 18% per annum on that part of the cash advance not in excess of $300.00 and 8% per annum on that part of the cash advance in excess of $300.00 but not in excess of $2,500.00. This interest is computed at the time the loan is made and the amount of the interest may, as here, be added to the amount advanced to determine the total amount payable by the borrower.

The amount of interest charged by plaintiff and added to the amount advanced represents the maximum permitted by law on a loan of $482.14 for a period of 25 months. The face amount of the note in this case, then, represented the money actually advanced by plaintiff to defendants, plus the maximum legal interest for a period of 25 months.

As authorized by Art. 5069–3.15(5), the note provided for an additional charge of five cents for each $1.00 "of any scheduled installment when any portion of such installment continues unpaid for ten (10) days or more following the date such payment is due, including Sundays and holidays." The note provides for refund to defendants, in case of payment in full prior to the date the last installment is due, of the unearned portion of the interest included in the face amount of the note as provided in Art. 5069–3.15(6). There is also the usual provision for acceleration by the maker in case of default and payment of attorney's fees if the note is placed in the hands of an attorney for collection.

Defendants made the first payment more than ten days after April 23, 1973, the date on which such payment was due. This payment was in the amount of $26.25, of which $1.25 represented payment of the late or delinquency charge, and the remaining $25.00 was applied to the face amount of the note, reducing the balance due to $600.00. Between the date of this payment and October 12, 1973, defendants made six payments, ranging in amount from $1.50 to $26.25, totalling $101.25, but at no time did they manage to bring their account to a current status as to any one installment. As of October 12, 1973, then, defendants

owed $7.50 in additional delinquency charges. For some reason not explained by the record, from the last $101.25 paid by defendants after the initial payment of $26.25, plaintiff deducted only $4.30 as default charges and the remainder ($96.95) was applied to the balance due on the face of the note, reducing it to $503.05.

Defendants made no further payment after October 12, 1973, and on October 22, 1974, one day before the 19th payment was due, plaintiff filed this suit, alleging that because of defendants' failure to pay the note plaintiff had been damaged in the sum of $503.05. This figure coincides with the face amount of the note, reduced by the amount which defendants had paid and which had been applied to reduction of the debt evidenced by the face amount of such note.

The filing of the suit by plaintiff seeking recovery of the entire unpaid balance of the note some six months and one day prior to the date the last installment was due clearly constituted an exercise by plaintiff of its power of acceleration.

Defendants' claim of usury is based on the theory that since the original amount of the note included interest at the maximum legal rate for a 25-month loan, the telescoping of the term of the note as the result of acceleration necessarily increased the rate of interest beyond that permitted by law.

■ Where a holder of a note, upon exercise of his power of acceleration, demands the entire amount of interest payable over the total term of the note he is, in effect, increasing the rate of interest payable by the maker, and if such demand constitutes a demand for a rate of interest which is illegal as computed to the date of acceleration, the result is a demand for usurious interest. 45 Am.Jur.2d *Interest and Usury* § 185, at 148 (1969).

Defendants' contention is simply that by failing to rebate the unearned interest plaintiff's suit seeks recovery of usury.

Article 5069–3.15(6) requires, in case of prepayment of an "add-on" note, that the lender "refund or credit the borrower with

an amount which shall be as great a proportion of the total interest contracted for . . . as the sum of the periodic balances scheduled to follow the installment date after the date of prepayment in full bears to the sum of all the periodic time balances under the schedule of payments set out in the loan contract."

■ Nothing in the statute in terms requires a rebate of unearned interest in cases where the lender, following default by the borrower, exercises his power of acceleration, as distinguished from the situation where the borrower exercises his right of prepayment. However, it is generally held that where a note is accelerated the date of acceleration is considered to be the date of maturity of the note, requiring a rebate of unearned interest. *Moore v. Sabine National Bank of Port Arthur,* 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.).

■ Defendants' first complaint is that the trial court erred in holding that plaintiff did not fail to rebate the unearned interest. The relevant testimony was given by plaintiff's account supervisor who testified in part as follows:

Q Now, referring you back to October of 1974 [the date of the last payment made by defendants], what was the balance on [defendants'] account?

A On October of 1974, the balance on this account was $503.05.

Q And have there been any payments made since that particular time?

A No, sir.

Q And in October of 1974, was this particular account accelerated?

A No, sir, it was not accelerated.

Q Was the net paid off and also rebating your interest according to Rule 78 [sic]?

A Yes sir, it was.

Q And figuring any delinquent fee or default charge at that time?

A That is correct.

Q And at that time was the account delinquent?

A That is correct, yes, sir, it was.

Q And what was the net payoff, figuring all rebates in regards to Rule 78 on interest and your default charges?

A At the time of figure the pay off, the pay off exceeded the gross note balance, even though the maturity date was approximately six and a half months overdue [sic] due to the fact that the computer picked up the late charges from all of the back list [sic] payments, henceforth [sic], we initiated our suit for the gross balance because the net pay-off was greater than the balance remaining in the account when the suit was filed.

Q In regard to the actual amount of rebate—at that time—do you have the figures on the rebate?

A Well, by Rule 78 [sic], which our computers set out, the refund would be approximately eight ($8.00) dollars.

Q O.K., is this the total amount owed and due the Finance Company?

A The five hundred three dollars and five cents.

Q Right.

A It is.

\* \* \* \* \* \*

Q And can you tell me if this figure of $503.05 . . . includes the interest, pre-computed interest to the final maturity of the note?

A That is correct.

Q So as of 10–12–73, the $503.05 figure does not include any rebate on interest charges, is that correct?

A No, sir, we don't reflect any refund on the account unless the account is paid off.

\* \* \* \* \* \*

Q And then the balance owed was $503.05?

A Yes, sir, the balance owed is $503.05.

Q And that is including unearned interest?

A That is including unearned interest and any insurance premium, if any.

At the time the suit was filed defendants had been tardy in making 18 payments, so that plaintiff was entitled to demand default and delinquency charges totalling $22.50, of which it had received, prior to October 12, 1973, $4.30. At the time the suit was filed, then, defendants owed $18.20 in delinquency charges. According to the testimony, if the unearned interest had been rebated and the accrued default charges had been demanded, plaintiff would have had the right to sue for approximately $10.00 more than the amount for which it actually sued.

The net effect of what plaintiff did was a benefit to defendants. Plaintiff, by foregoing a demand for the default charges, in effect rebated more than it was required to refund under the statute.

The trial court did not err in refusing to award defendants the statutory penalty for usury.

■ However, the trial court erred in failing to award defendants the statutory penalty for which plaintiff is liable under the Federal Truth in Lending Act, 15 U.S. C.A. § 1601, *et seq.* (1974), and Regulation Z, 12 C.F.R. § 226, promulgated by the Federal Reserve Board in the exercise of the power granted to it in the Federal statute.

Under §§ 226.6(a) and 226.8(b)(4), the lender is required to disclose to the borrower, "clearly and conspicuously" "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." Plaintiff's supervisor of accounts testified that the "Federal Disclosure Statement" prepared and delivered to defendants in this case does not contain such disclosure. The disclosure statement brought up with the record in this case is in the form of a very poor machine-made copy of the original which, itself, was poorly prepared in that the typist in some instances did not insert the necessary information wholly in the boxes provided for each separate disclosure item. But an examination of this copy reveals that, in fact, it is impossible to determine from the entry in the box labeled "Default Charge" either the amount of such charge or the method of computing

it. The only entry in this box is "1.2," without a dollar mark, percentage sign, or other symbol.

It is true that the method of computing the default charge is set out in the note itself. But it cannot be held that the required disclosure has been made "clearly and conspicuously" when its nature can be ascertained only by referring to two separate instruments, neither one of which mentions the other.

In their counterclaim defendants, although alleging several violations of the applicable federal statute and regulations, sought but a single recovery. That is, they do not claim a separate recovery for each violation. It is, therefore, unnecessary to consider the other claimed violations of the federal regulations, since the finding of additional violations, if additional violations there be, would have no effect on the amount defendants seek to recover.

■ Under 15 U.S.C.A. § 1640(a)(1974), as a result of the failure of plaintiff to comply with the requirement of Regulation Z, § 226.8(b)(4), defendants are entitled to recover twice the amount of the finance charge in addition to court costs and attorney's fees. The finance charge in this case is $142.86. To this defendants would have us add $9.72, the amount of the premium paid for credit life insurance. Defendants' theory is that plaintiff failed to make the proper disclosures concerning insurance, and that, therefore, the insurance premium must be considered a part of the finance charge under § 226.4(a)(5) of Regulation Z. There is in the statement of facts an instrument, separately dated and signed, containing the required disclosure. Despite the fact that defendant, Richard Chavez, denied that he was told such insurance was optional and that he had requested it, the statement is at least evidence or probative force that the required disclosure was made. The denial, therefore, merely raises a fact issue which the trial court resolved in favor of plaintiff. It is not required that the insurance premium be included in the finance charge.

■ The trial court erred in not awarding defendants $285.72 (double the finance charge) plus attorney's fees and court costs. Since the court below made no finding as to the reasonable value of the services rendered by defendants' attorney, and since the value of such services is not established as a matter of law, this Court cannot render a proper judgment in this case.

There being reversible error in the case and absent a proper basis for rendition of judgment in this Court, we have concluded that, in the interest of justice, the entire case should be remanded for a new trial, it being our opinion that the case was not fully developed.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

CADENA, Justice, dissenting.

I do not agree with the conclusion that the trial court correctly denied defendants' prayer for recovery of the statutory penalties for usury.

The record conclusively, I think, discloses that the amount sued for included unearned interest. The face amount of the note, $625.00, included precomputed interest at the maximum legal rate on a loan of $482.14 repayable in 25 monthly installments. On October 12, 1973, after the total payments made by defendants, less default charges, had been applied to the reduction of the principal, the unpaid balance was $503.05. Clearly, this unpaid balance included interest computed on the assumption that the note would be paid in 25 months. There is no other possible arithmetical process which will yield the figure, $503.05.

Plaintiff's supervisor of accounts testified that on October 12, 1973, the amount owed by defendants, taking into consideration delinquency charges and rebate of unearned interest, was $503.05. Simple arithmetic discloses the complete falsity of this statement. The maximum amount of delinquency charges for which defendants could be liable at that time was $7.50. They had paid $4.30 of such amount. Therefore, the total unpaid delinquency charges amounted

to $3.20. The total amount for which defendants were then liable would be $506.25. But this figure includes 19 months' unearned interest. Even if the unearned interest is computed according to the "Rule of 78ths,"[1] a method which is more favorable to the lender than is the actuarial method of computing unearned interest, the amount of interest to be refunded would be in excess of $80.00. The "net payoff" as of October 12, then, would not exceed $426.25.

Nor does $503.05 correctly represent the net "payoff" figure as of October 22, 1974, the date on which plaintiff filed this suit, if delinquency charges and unearned interest are taken into consideration. The truth is reflected in that portion of the testimony of plaintiff's supervisor of accounts in which he admitted that the amount which plaintiff was seeking to recover includes unearned interest. Under the circumstances of this case, the amount sued for included usurious interest.

Under the holding in *Moore v. Sabine National Bank,* 527 S.W.2d 209 (Tex.Civ. App.—Austin 1975, no writ), plaintiff, by filing suit to recover an amount which included usurious interest, "charged" excessive interest and became subject to the statutory penalty.

The making of this illegal charge is sought to be justified by explaining that if, to the unpaid balance of $503.05, plaintiff had added the total delinquency charges for which defendants were liable, less the interest to be rebated, the amount due would be in excess of $503.05. Therefore, plaintiff decided to forego assertion of its undoubted right to demand payment of default charges and chose, instead, to demand payment of excessive interest.

It is difficult to categorize this asserted defense. Article 5069–8.01 relieves a lender who charges excessive interest from liability for the statutory penalty if the charge resulted from "accidental and bona fide error." Although neither the statute nor the decisions furnish definitive guidelines for the application of this defense, it is clear that plaintiff's explanation cannot be upheld as an assertion of accidental and bona fide error.

The cases suggest that the defense applies only to computational or clerical errors, and then only to errors which result in the charging of interest which is but slightly above the permitted rate. *Guetersloh v. C.I.T. Corp.,* 451 S.W.2d 759, 761 (Tex.Civ. App.—Amarillo 1970, writ ref'd n. r. e.); *Western Bank & Trust Co. v. Ogden,* 42 Tex.Civ.App. 465, 93 S.W. 1102, 1104 (Dallas 1906, no writ). *See generally,* Annot., 11 A.L.R.3d 1498, 1516–18 (1967).

The cases also reflect a refusal to consider the subjective motive or intent of the lender as a material factor in determining whether or not a transaction involves usury. *Johns v. Jaeb,* 518 S.W.2d 857, 860 (Tex.Civ. App.—Dallas 1974, no writ); *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.,* 511 S.W.2d 724, 732 (Tex. Civ.App.—Amarillo), *writ ref'd n. r. e. per curiam,* 516 S.W.2d 136 (Tex.1974). If the lender intentionally does the act which leads to a violation of the statute, liability attaches. *Townsend v. Adler,* 510 S.W.2d 175, 176 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ).

Plaintiff's decision to insist on payment of usurious interest was deliberately made. Assuming that plaintiff acted under the belief that by foregoing his right to demand payment of default charges he acquired the

---

1. The description of the method of computing unearned interest embodied in Art. 5069–3.-15(6) is, in substance, a verbal expression, in somewhat terrifying form, of the Rule of 78ths which, in effect, says that in the case of a loan payable in 12 equal monthly installments, $^{12}/_{78}$ of the total finance charge shall be allocated to the first payment, $^{11}/_{78}$ to the second payment and so on until $^{1}/_{78}$ of the charge is allocated to the 12th payment. Since the denominator will be "78" only in the case of a loan payable in 12 monthly installments, the label, "Rule of 78ths" is, to some extent, a misnomer. The following formula has been devised for computing, in one operation, the amount of rebate due under the Rule: $R = F \times P (P + 1)/N(N + 1)$, where "R" represents the amount of the rebate, "F" stands for the amount of the finance charge, "P" stands for the number of installments prepaid, and "N" represents the total number of installments.

right to demand excessive interest, its mistake was one of law and cannot constitute a defense.

I know of no authority supporting the theory that refraining from engaging in lawful conduct somehow engenders a right to act illegally.