Affiliated 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-006-CV





AFFILIATED CAPITAL CORPORATION AND ACRG JOINT VENTURE,



 APPELLANTS


vs.





COMMERCIAL FEDERAL BANK AND RYAN MORTGAGE COMPANY,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 437,570, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING



 





 Affiliated Capital Corporation and ACRG Joint Venture, appellants, (hereinafter
collectively "the Venture"), bring this appeal from a summary judgment in favor of Commercial
Federal Bank and Ryan Mortgage Company, appellees (hereinafter referred to collectively as "the
Bank"). After a dispute arose over a loan transaction, the Venture sued the Bank on claims of
usury, breach of contract, breach of a duty of good faith, violation of the Deceptive Trade
Practices-Consumer Protection Act (DTPA), (1) and unfair collection tactics. The district court
granted two partial summary judgments in favor of the Bank, which were incorporated into a final
summary judgment ordering that the Venture take nothing. We agree with the district court's
actions in regard to the summary judgments and will affirm the final judgment.



FACTUAL BACKGROUND


 In 1983, the Venture entered into a construction loan agreement with the Bank for
$6,405,000 to construct an apartment complex in Austin, Texas. This agreement also covered
permanent financing on the apartment complex. The loan agreement was evidenced by a
promissory note (the "Note") and secured by both a deed of trust on the property and an
assignment of rents. The Note was part of a bond program established by the Austin Housing
Financing Authority to facilitate the building of multi-family housing. The Authority used the
proceeds of a bond sale to fund large loans to banks who would subsequently make smaller loans,
under the program guidelines, to developers of multi-family projects. 

 In February and March of 1986, the Venture failed to make payments on the Note. 
After receiving a notice of possible foreclosure for default, the Venture wrote the Bank requesting
to prepay the remaining balance of the loan. The Bank responded that the note did not allow
prepayment prior to December 1992, and that the Bank would not waive the Note provisions
because of its bond agreement with the Austin Housing Financing Authority. The Bank suggested
that the Venture try to use government securities to serve as substitute collateral. From April
through August, the Venture again failed to make payments under the Note. In August, the Bank
accelerated the Note for default, demanding payment of the balance due and the prepayment
penalty. However, by August the Venture was no longer able to prepay the balance of the loan,
so the Bank foreclosed. The Venture then filed this suit against the Bank.



NOTE PROVISIONS


 Only a few of the note provisions are at issue in this case; they are set forth below
for the sake of clarity. The provisions at issue concern prepayment, acceleration, interest after
default, and the usury savings clause. The pertinent portions of the no-prepayment clause and
prepayment-penalty provisions read as follows:



No prepayment of the note shall be allowed prior to December 21, 1992. After
such date the undersigned shall have the right to prepay, in whole or in part, the
unpaid balance of principal. . . . In the event of any prepayment, voluntary, by
acceleration or otherwise or if for any reason the full stated principal amount of
this Note is not paid as scheduled to maturity, including by failure of the
undersigned to request or qualify for advances, a prepayment charge calculated in
the manner set forth on Exhibit "A" shall be imposed.



Exhibit "A" was a schedule of prepayment penalties listed in decreasing order. The first penalty
was equated with a prepayment occurring before December 21, 1982, and the decreasing amounts
of the penalty were scheduled to prepayments before each following June 1 and December 1, until
December 1, 2002. 

 The provisions governing default, including interest on default and acceleration on
default, state:



Upon default hereunder . . . at the option of the holder of this note, all amounts
then unpaid under this note . . . shall bear interest at the lesser of sixteen and eight
tenths percent (16.8%) per annum, or the maximum rate permitted by law . . . and
in addition the holder may, at its option, declare immediately due and payable the
entire principal sum together with all interest accrued and owing thereon, plus any
other sums payable at the time of such declaration pursuant to this note, the Loan
Agreement, the Deed of Trust, and any other instrument securing the note.



Finally, the usury savings clause reads:



All agreements between the maker hereof and the holder hereof . . . are expressly
limited so that in no contingency or event whatsoever shall the amount paid, or
agreed to be paid, to the holder hereof for the use, forbearance, or detention of the
covenant or obligation contained herein, exceed the maximum amount permissible
under applicable law.



PROCEDURAL HISTORY


 In response to the Venture's petition, the Bank filed a motion for partial summary
judgment. The district court granted the motion with respect to the usury claim against the Bank
and with respect to the duty-of-good-faith and breach-of-contract claims against Ryan Mortgage
Company. (2) The district court granted the Bank's second motion as to the breach-of-contract,
breach-of-duty-of-good-faith, and DTPA claims. Those judgments disposed of all issues, except
a claim of unfair collection tactics which the parties non-suited, without prejudice, to allow for
the entry of a final judgment incorporating the two former partial summary judgments. None of
the orders specifies the basis for granting summary judgment.



STANDARD OF REVIEW


 A trial court should grant a motion for summary judgment only if the movant
establishes by competent summary judgment evidence that there is no genuine issue of material
fact to be decided and that the movant is therefore entitled to judgment as a matter of law. Nixon
v. Mr. Property Mgt. Co., 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden of
demonstrating that no genuine issue of material fact exists. Id. A defendant moving for summary
judgment is required to prove that as a matter of law the plaintiff has no cause of action, that is,
that there is no genuine issue of material fact as to one or more of the essential elements of the
plaintiff's cause of action. Citizens First Nat'l Bank v. Cinco Exploration Co., 540 S.W.2d 292,
294 (Tex. 1976). Where the order does not give a specific basis for granting the judgment, the
non-movant, on appeal, must show why each ground asserted in the motion is insufficient to
support the order. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989); McCrea v.
Cubilla Condo. Corp., 685 S.W.2d 755, 757 (Tex. App. 1985, writ ref'd n.r.e.).

 The Venture presents general points of error complaining that the district court
improperly granted summary judgment in the Bank's favor. These points preserve for argument
all possible grounds, presented in the response, upon which the motion should have been denied. 
See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Malooly
Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).



DISCUSSION AND HOLDING


A.  Usury Claim

 Based on the Note, the Venture asserts two bases for its usury claim: 1) the Bank
actually charged usurious interest; and 2) the Bank contracted for usurious interest. In appealing
the summary judgment on this issue, the Venture asserts no disputed fact issues. (3) Instead, the
Venture contends that the district court erred as a matter of law in granting the Bank's motion for
summary judgment on this claim.

 The Venture contends the Bank actually charged usurious interest by charging the
prepayment penalty on the accelerated amount of the Note. The Venture contends that this penalty
was usurious, in fact, because it can only be construed as applying to forbearance on the total
accelerated amount, as a separate contract. Under this theory, had the Venture paid the amount
due the day after acceleration, the penalty amount of $171,957.96 would have been viewed as one
day's interest on the amount owed, which would have been unlawful. (4) Therefore, the Venture
contends that neither the spreading doctrine nor the savings clause of the original Note could be
applied to this penalty. 

 In support of this contention the Venture cites Crider v. San Antonio Real Estate,
Building & Loan Ass'n, 35 S.W.1047 (Tex. 1896); General Motors Corp. v. Uresti, 553 S.W.2d
660 (Tex. Civ. App. 1977, writ ref'd n.r.e.); and Moore v. Sabine National Bank 527 S.W.2d
209 (Tex. Civ. App. 1975, writ ref'd n.r.e.). Although these cases are not directly on point, this
Court finds no Texas cases dealing with similar prepayment penalties; therefore we will examine
the Venture's cited cases to determine if they are persuasive. 

 General Motors involved consumer credit installment contracts and defined its
terms based on article 5069-7.04 of the Texas Revised Civil Statutes and cases under the federal
consumer credit guide. General Motors, 553 S.W.2d at 663. The case at bar is not a consumer
credit case. Further, General Motors interpreted the availability, after acceleration, of a refund
credit of time-price differential which applied only to voluntary prepayment. That case held that
no voluntary prepayment could happen after acceleration. Id. We find the case distinguishable. 
Under the terms of the Note in this case, the penalty applies not only on the event of voluntary
prepayment but also on any event preventing the loan from maturing as originally scheduled.

 Moore, likewise, is distinguishable. It deals only with the concept of when a
charge for unearned interest had been made. Moore, 527 S.W.2d at 211. Charging for unearned
interest is not at issue in this case.

 The next authority upon which the Venture bases its usury claim is Crider. That
case involved a loan which was declared in default after three or more installments were past due. 
Pursuant to the contract, the entire remaining principal on the notes as well as the outstanding
interest already due were demanded and that entire amount was charged interest at the highest
lawful rate. The interest charged thus exceeded the legal rate for the outstanding principal alone. 
The Texas Supreme Court found that, according to the parties' contract, the continuing interest
on an unpaid amount due after maturity (default triggering maturity) would be charged against a
new obligation consisting of the combined outstanding interest and principal. The amount of this
new obligation saved the contract from being usurious. Crider, 35 S.W. at 1048. Those facts
likewise are distinguishable from the case at bar.

 In this case, the Note applies the prepayment penalty as a one-time charge in the
event of either voluntary prepayment, prepayment by acceleration, or failure to qualify for or
request construction advances. Thus, the penalty is not for continuing forbearance of payment
of the accelerated sum after acceleration but, rather, is designed to compensate the lender for
interest that will not be earned due to the failure of the Note to go to maturity. This intent is
shown not only by the language of the Note but by the fact that Exhibit "A" sets the penalty
amount based on the amount of time by which the initial loan was shortened, not the amount of
time during which the accelerated sum is unpaid. Indeed, the Note contains another provision,
set forth above, which provides for payment of interest on the matured obligation in the event of
default. The interest-on-default clause is analogous to the continuing-interest provision at issue
in Crider.

 We hold that Crider does not require us to characterize the prepayment penalty as
interest on a new obligation created by acceleration. Instead, the terms of the Note suggest that
the sum is more properly construed as a penalty to mitigate the loss of the originally contracted
interest on the initial loan, and as such the penalty is susceptible to the application of the spreading
doctrine and the savings clause in the Note. Cf. Dixon v. Brooks, 678 S.W.2d 728, 731 (Tex.
App. 1984, writ ref'd n.r.e.) (late charge that is (1) a one time charge, (2) for an indefinite term,
(3) payable on delinquency, and (4) unaffected by length of time before late payment received is
added to the interest on the principal and spread to determine if it is usurious).

 The Venture cites Fisher v. Westinghouse Credit Corp., 760 S.W.2d 802 (Tex.
App. 1988, no writ), in its brief and relied heavily on that case in oral argument. We find no
application of the result in that case to the case at bar. Fisher itself says that, where a note is
accelerated, spreading can be applied to a late charge to save a loan from being usurious. Fisher,
760 S.W.2d at 806. We agree with that statement of the law. However, the decision in Fisher
against the credit company resulted from the failure of the credit company to properly plead
acceleration, creating a question as to whether the penalty charged might have been interest on
the late installment-interest payments. Interest on interest would not have been spreadable across
the underlying principal and therefore could have been usurious. Id. at 806-807. No similar fact
situation arises in this case.

 We hold that application of the spreading doctrine and the savings clause to the
prepayment penalty prevents the penalty, as charged, from being usurious. 

 The Venture's second basis for its usury claim is the effect of a "hypothetical
failure" by the Venture to have qualified for even the first advance under the loan. That event
would have triggered the prepayment penalty under the terms of the Note. The Venture argues
that the amount of the penalty would have been considered interest on the small portion of the
principal originally advanced and would have been in excess of the legal rate. 

 The Venture claims that the possibility of this contingency, although it never
occurred, makes the Note usurious on its face and cannot be avoided by the savings clause in the
Note which calls for a rebate of any amount of interest which would be usurious. That is not the
law of this state. The law requires all provisions of a contract to be given full effect, and a
provision that calls for the actual reduction of the interest paid, down to a legal amount, saves a
contract from being usurious on its face. See Nevels v. Harris, 102 S.W.2d 1046, 1049 (Tex.
1937).

 We hold that the district court correctly granted the Bank's partial motion for
summary judgment as to the usury claim. Point of error one is overruled.



B.  Other Claims 

 The Venture alleged three other causes of action against the Bank. All three causes
depended on the meaning given to the no-prepayment and acceleration clauses set forth above. 
In separate points of error as to each remaining cause, the Venture contends that the Note is
ambiguous, requiring a fact finder to determine its meaning and precluding the district court from
granting summary judgment.

 Whether a contract is ambiguous is a question of law for the court looking at the
contract as a whole. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). If the contract can be
given only one reasonable and certain meaning it is not ambiguous as a matter of law. Id. at 394. 
The court in construing the contract must look at the entire writing and try to harmonize all
provisions so that none is rendered meaningless. Id.; Universal C.I.T. Credit Corp. v. Daniel,
243 S.W.2d 154, 158 (Tex. 1951). This Court finds that based on the summary judgment record,
the district court could infer a reasonably certain meaning from reading the contract. 

 The only reasonably certain meaning of the no-prepayment provision of the Note
that will harmonize with the provisions allowing for acceleration and demand in the event of
default is to construe the no-prepayment language as relating only to voluntary prepayment, as the
Bank argues. Following the sentence, in the note, that no prepayment shall be allowed prior to
December 21, 1992, the next sentence says, "After such date the undersigned shall have the right
to prepay." Further in that same clause, the notice requirements are given for the "undersigned"
to be allowed to prepay. The undersigned on the Note was ACRG Joint Venture, by its partners. 
The Bank, as maker, was not one of the undersigned. Therefore, it is reasonable to construe the
Note so that the prohibition against prepayment applies to the Venture, not the Bank. Nor does
this interpretation fail to give purpose to the prepayment penalty schedule, since the penalties
called for on dates prior to December 1992 would apply in the event of either default and
acceleration or failure of the Venture to qualify for construction advances. 

 Conversely, to find all prepayment impermissible, even at the demand of the
lender, would render the default and acceleration clauses meaningless. Alternatively, finding that
the prepayment penalties for years prior to 1992 set forth in Exhibit "A" authorized voluntary
prepayment would render the no-prepayment language meaningless. Therefore, either of the
Venture's requested interpretations would fail to harmonize one of the clauses in the Note.

 The Bank's suggested construction of the Note provides a clear and certain meaning
and leaves no ambiguity for a trier of fact to decide. The district court could have properly
construed the note as the Bank requested in its motion for summary judgment. For the purpose
of determining the remaining points of error, we will use that construction.



1.  Breach-of-Contract Claims

 In its third point of error, the Venture contends that the district court erred in
granting summary judgment on its breach-of-contract claims relating to the Bank's refusal to allow
prepayment of the loan and to the Bank's subsequent action accelerating the loan for default. The
Bank's motion for summary judgment urged that there was no breach of contract because the
terms of the Note prohibit prepayment before December 21, 1992, and allow for acceleration on
default.

 Under the Bank's construction of the Note's terms, which the district court could
have followed, neither of the Bank's actions provide the basis for a claim for breach of contract
as a matter of law. We agree. Accordingly, this point of error is overruled.



2.  Breach-of-Duty-of-Good-Faith Claims

 In its fourth point of error, the Venture contends that the district court erred in
granting the Bank partial summary judgment as to the Venture's breach-of-the-duty-of-good-faith
claim. Since that court could construe the meaning of the Note, no fact issue remained regarding
the rights of the Bank, only questions of law.

 There can be no breach of the duty of good faith merely by a party's acting in strict
accordance with the terms of a contract. See English v. Fisher, 660 S.W.2d 521, 522 (Tex.
1983). The Note gives the Bank the right to deny prepayment prior to 1992. The Venture argues
that the reason given by the Bank for refusing to accept prepayment was shown to be false. 
However, when acting in accord with the Note as written, the reason given is irrelevant. (5)

 The Bank's right to refuse prepayment is absolute under the terms of the Note; no
reason was required. See Adolph Coors Co. v. Rodriguez, 780 S.W.2d 477, 483 (Tex. App.
1989, writ denied) (where an act is neither required under the terms of the contract, nor grows
out of those terms, no duty of good faith can be extended to the refusal to perform those acts). 
Therefore, the explanation given for the refusal to allow prepayment cannot form the basis for a
cause of action. 

 The Venture further claims that the Bank acted dishonestly by accelerating the note
after offering the Venture a chance to substitute collateral. The Bank offered uncontroverted
summary judgment evidence that while the Venture was attempting to substitute collateral the loan
fell further in default and acceleration was judged to be necessary. There is no controverting
evidence either that the Bank waived acceleration or any other option available under the Note for
default, or that the Note was not in default. No basis for any claim of dishonesty in fact arises
from the Bank's enforcement of its rights under the Note. This point of error is overruled. 



3.  DTPA Claims

 The Bank addressed the DTPA claims in its second motion for partial summary
judgment. The grounds asserted in the motion were: 1) no issues as to any material facts existed
and defendants were entitled to judgment as matter of law; 2) as a matter of law no material
misrepresentation or nondisclosure regarding the terms of the Note was made as alleged in the
petition; and 3) as a matter of law, the Bank did not engage in unconscionable actions as alleged
in the petition. The Venture contends in its second point of error that the district court erred in
granting this motion because genuine issues of material fact existed.

 In its petition, the Venture asserts claims under four sections of the DTPA. (6) The
first claim was under DTPA section 17.46(b)(5), which becomes a consumer action under section
17.50(1). The Venture alleged that the Bank misrepresented the characteristics of the goods
purchased by representing that they could be retained by prepayment of the debt along with a
prepayment penalty at any time. Under DTPA section 17.46(b)(23), the Venture alleged failure
to disclose that the apartment complex could be "taken away" despite tender of prepayment and
the penalty listed on Exhibit A to the Note. Then, under DTPA section 17.46(b)(12), the Venture
alleged the Bank misrepresented the rights, remedies, and obligations of the loan documents. 

 These claims were based on the language of the Note that is part of the summary
judgment evidence. There is no evidence in the summary judgment record of separate
representations as to prepayment, acceleration, or interest. These claims are resolved as a matter
of law by a construction of the Note that prohibits voluntary prepayment prior to December 1992. 
Given that construction, the Note contained the disclosure that the apartment complex could be
foreclosed in event of default despite a prior offer of prepayment. This was the non-disclosure
which the Venture alleged. Where there is uncontroverted evidence that the disclosure was made,
summary judgment is proper as a matter of law. The representations alleged as misrepresentations
are merely assertions of the Bank's desire to stand by the terms of the Note as construed by the
Bank. Enforcing rights provided for by contract does not violate DTPA section 17.46(b)(12). 
See Ogden v. Dickinson State Bank, 662 S.W.330, 333 (Tex. 1983) (holding there was no
violation of section 17.46(b)(12) when a bank foreclosed for partial default since the contract lien
gave the bank that right). Therefore, the district court properly found that none of these three
DTPA claims precluded granting summary judgment for the Bank.

 The Venture's final claim under the DTPA is that the Bank acted unconscionably
by taking "irrational and oppressive actions" to prevent payment of the Note, depriving the
Venture of the value of its investment in the property. The Venture alleges "this" created a gross
disparity in value as prohibited by DTPA Section 17.50(a)(3). We will regard "this" as referring
to the acceleration and foreclosure on Venture's investment property. The Bank's actions, even
if oppressive, fail to give rise to a DTPA claim. 

 The statement of the claim confuses the nature of the transaction between the Bank
and the Venture. The Venture did not contract to buy property, materials, or an apartment
complex from the Bank; rather, the Venture contracted to borrow money from the Bank using the
completed project as security for the loan. The Venture received its loan of more than six million
dollars from the Bank and paid interest on the use of the money while the loan was outstanding. 
When the Venture defaulted on the loan, the Bank foreclosed upon the security to satisfy the
outstanding value of the loan, as allowed by the Note.

 Hypothetically, gross disparity in this type of transaction would require evidence
that the Venture was prevented from using the money borrowed despite paying the costs of
borrowing, or that the Venture had sustained a similar inequity in its bargain. The evidence here
is to the contrary. The Venture received the use of the money to build the apartment complex. 
Receipt of a return on an investment in the apartment complex was not part of the benefit
contracted for between the Bank and the Venture. Therefore, the Venture's failure to receive that
benefit cannot form the basis of any DTPA claim against the Bank. 

 Further, the only controverting evidence of gross disparity is in the Venture's own
interrogatory answers. These answers are not proper summary judgment evidence on behalf of
the Venture. See Keever v. Hall & Northway Advertising, Inc., 727 S.W.2d 704, 705 (Tex. App.
1987, no writ). 

 Since there was no genuine issue of material fact as to gross disparity, and since
there was no basis for this DTPA claim as a matter of law, this claim could not preclude granting
of summary judgment for the Bank.

 None of the DTPA claims raises any question of fact not resolved by the
construction of the Note. Given the construction of the Note properly available to the district
court, we hold that as a matter of law summary judgment on the DTPA claims was proper. This
point of error is overruled.



CONCLUSION


 This Court holds that there were no issues of material fact which, as a matter of
law, would allow the Venture to prevail on at least one essential element of each of its causes of
action. We, therefore, affirm the district court's final judgment incorporating the two orders
granting partial summary judgment.



 

 Mack Kidd, Justice

[Before Justices Powers, Jones and Kidd; Justice Powers not participating]

Affirmed

Filed: July 1, 1992

[Publish]

1. Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (1987 & Supp. 1992).
2. In the Bank's first motion for partial summary judgment, Ryan asserted a separate
defense of agency to the usury, breach-of-contract, and breach-of-duty-of-good-faith claims. 
3. In fact, the Venture had requested summary judgment in its favor on this issue in an
earlier motion. The trial court denied that request before the Bank presented its own motion. 
4. According to the Venture's figures, the outstanding balance at the time of acceleration
was $6,395,460.78. Under its theory, the manner for calculating legal interest for one day at
18% is as follows: $6,395,460.78 x .18 = $1,151,182.74 divided by 365 days = $3,153.93 x
1 day = $3,153.93 as legal interest. That amount is considerably less than $171,957.96 (the
amount of the penalty).

 If spreading is allowed, however, the penalty amount, $171,957.96, is added to all other
interest charged over the life of the loan, $3,387,161.23, for a total of $3,559,119.19, and this
total is compared to the highest legal rate the Bank could have charged over the time the loan
was outstanding, May 4, 1983, to July 7, 1987. At the highest lawful rate of 18%, the
summary judgment evidence shows that the Bank could have lawfully charged up to
$4,200,550.82, an amount greater than the sum of the interest and penalty actually charged.
5. The Venture's reliance on Printing Center of Texas v. Supermind Publishing Company,
669 S.W.2d 779 (Tex. App. 1984, no writ), is misplaced. That case dealt with rejection of
non-conforming goods. With non-conforming goods, the buyer's right to reject must be based
on the non-conformity, not on a desire to escape the bargain. The reason for rejection must be
given in good faith. Id. at 784. However, the rights at issue in this case are not conditional.
6. This Court is aware that in pure loan transactions the DTPA does not apply because a
borrower of money is not considered a consumer within the DTPA definition. See Riverside
Nat'l Bank v. Lewis, 603 S.W.2d 169, 174-5 (Tex. 1980). There may be a legitimate question
as to whether this case involves a pure loan transaction and is therefore not covered at all by
the DTPA. However, this issue was not raised in the Bank's motions for summary judgment
and so cannot be considered by this Court as a basis for upholding the trial court's judgment.