BURTON et al. v. STAYNER. (No. 5565.)*

(Court of Civil Appeals of Texas. San Antonio. Jan. 5, 1916. Rehearing Denied Feb. 2, 1916.)

1. USURY ⊜—75—NATURE OF USURY.
　　Where the original transaction was usurious, that vice will follow a debt based on such usury in whatever form it may assume.
　　[Ed. Note.—For other cases, see Usury, Cent. Dig. § 148; Dec. Dig. ⊜—75.]

2. USURY ⊜—37—AGREEMENTS—WHAT CONSTITUTE—"INTEREST."
　　Where plaintiff invested a sum of money in a land deal under an agreement providing after deduction of the expenses for payment of the principal and twice the amount thereof as profits, in case there were profits, such agreement is not in violation of the usury statutes, the provision for payment of profits not being for the payment of "interest," defined by Vernon's Sayles' Ann. Civ. St. 1914, art. 4973, as the compensation allowed by law or fixed by the parties for the use of money, for in case there

were no profits plaintiff would be entitled to nothing.
　　[Ed. Note.—For other cases, see Usury, Cent. Dig. § 92; Dec. Dig. ⊜—37.
　　For other definitions, see Words and Phrases, First and Second Series, Interest.]

3. CONTRACTS ⊜—329—ACTIONS—DEFENSES.
　　Where defendants wholly repudiated their agreement to invest a portion of the profits to which plaintiff was entitled in another transaction in a second deal, claiming that plaintiff was entitled to nothing, an action by plaintiff to recover the amount to which he was entitled under the first deal cannot be defeated on the ground that it was not then due.
　　[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1511, 1585–1588; Dec. Dig. ⊜—329.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by F. L. Stayner against E. O. Burton and another. From a judgment for plaintiff, defendants appeal. Affirmed.

A. J. Bell and R. L. Robertson, both of San Antonio, for appellants. John De Berry Wheeler, of Aransas Pass, and Gillette & Robertson, of San Antonio, for appellee.

CARL, J. Appellee Stayner sued Burton & Danforth, and recovered a judgment for $5,000 as the principal of an investment made by said firm in what was known as the "Falfurrias Deal." This cause is based upon the following proposition, which was accepted by appellee:

"Burton & Danforth.

"San Antonio, Tex., April 18, 1910.
"Mr. F. L. Stayner, Peoria, Ill.—Dear Stayner: We have invested for you $5,000.00 on the Aransas Pass account in the Falfurrias proposition on the guarantee of 50 per cent. profit according to the talk we had with Holmes. This will be in lieu of a contract and will cover the matter. I can make a separate agreement if you wish it. It is going pretty well now, and should be closed up this year.
"Yours sincerely, Burton & Danforth,
　　　　　　　　　　　　　"E. O. B."

This matter grew out of a prior deal whereby Burton & Danforth induced appellee to invest $5,000 in what was known as the Aransas Pass deal, whereby he received $10,000 profits on the investment. That first contract is as follows:

"Burton & Danforth hereby acknowledge receipt of $5,000.00 (five thousand dollars) from F. L. Stayner to be invested in the Aransas Pass townsite and farm lands in Aransas and San Patricio counties, Texas.

"It is mutually agreed that F. L. Stayner is to have his principal repaid and ten thousand dollars from the profits of the deal, which $15,000.00 is to be full payment for his interest in the deal.

"The proceeds of sales shall be applied as follows: First, to pay commission to agents and operating expenses; second, the land shall be paid out in full; third, the principal of $5,000 shall be returned to F. L. Stayner; and, fourth, the $10,000.00 profits shall be paid him.

"F. L. Stayner is to be agent in Illinois with a commission of 20 per cent. on sales made by him or his agents, payable in full on cash sales, and on installment sales $10.00 from

first payment and $5.00 each from second and third payment."

When the Aransas Pass deal was closed, appellants paid Stayner the $5,000 invested, paid him $5,000 in stock in the Aransas Pass Channel & Dock Company, and then, by agreement, invested $5,000 of the profits in the Falfurrias deal, as indicated in the first instrument copied herein.

Appellants contended that: (1) The contract of 1908, whereby the $5,000 was originally obtained from Stayner, was usurious, and he could not recover any more than the principal, which he had already received; (2) that the agreement to invest $5,000 in the Falfurrias deal was void because they had no money belonging to Stayner except the usurious interest on the first deal, or Aransas Pass deal, and therefore any contract based on that as an investment was without consideration and void; and (3) if Stayner was entitled to recover said $5,000 in the Falfurrias deal, he was not entitled to a judgment for his money, but only to an interest in the property, because said property had not been closed out, but was still on hand.

Appellee denied the usury, and alleged that it was an investment he made under a guaranty of certain profits; that he ran the risk of losing his principal invested, and, no matter how much profits were made on the deal, he was limited in the profits he might receive. He further alleged that the Falfurrias deal had been closed and the land sold.

[1, 2] We shall first investigate as to whether the first contract was an usurious interest loan, or simply an investment; because it is immaterial whether the Falfurrias deal was usurious or not, for he only sued for the principal and made no effort to collect the 50 per cent. profit therein guaranteed him. And if the $5,000 therein invested was not usurious interest, but was legitimate capital, Stayner would have the right to collect the principal even under the usury statutes.

It will be observed that there is no guaranty in the Aransas Pass contract that any certain profit will be made, nor even that the principal will be repaid; but a method is provided whereby appellee is to be paid the capital invested and his profits before Burton & Danforth got anything. The land must first be paid for, and the expenses of sales, before Stayner receives anything, and if the land had not sold for more than enough to pay expenses, commissions, and for the purchase price of the land, there is no provision for the repayment of Stayner's money. He testified that he did not know whether he would have been liable for assessments, if the deal had not been a success; "but it was generally understood, if it did not pay out, we would lose our investment." In other words, if Burton & Danforth did not make a success, he would lose his investment.

It is true that, if the original transaction be tainted with usury, that vice would follow the debt in whatever form it might assume. First National Bank of Montague v. Wayburn, 81 Tex. 57, 16 S. W. 554; Bank v. Ledbetter, 34 S. W. 1042. But profits are not the same as interest. "Profit" is the gain made on any business or investment when both receipts and disbursements are taken into consideration. It is the net gain over and above the capital invested after expenditures are deducted. As defined by our statute (article 4973, Vernon's Sayles' Civil Statutes:

"Interest is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money."

It contemplates that both the principal and agreed rate of interest shall be returned to the lender.

But in this case there is no element of interest. If the undertaking were a success, and the Aransas Pass deal proved to be such, he was to receive his investment of $5,000 and profits to the extent of $10,000 if they made it. This was guaranteed to the extent that Burton & Danforth was to receive nothing until that was paid. But if the real profits on the $5,000 investment amounted to $20,000, Stayner did not share beyond $10,000. If it had been a failure, the testimony is ample to sustain a finding that Stayner would have lost the money invested. He said he was not able technically to define his situation as to his liability for assessments, but they did consider that he would lose his money if the enterprise should not be a success. Under the usury statutes, the principal may be recovered; but in this case the principal could not be recovered unless the proceeds of the enterprise were sufficient to pay it. And so we say that under our statutes this is not an interest transaction, but a mere business venture in which appellee staked his $5,000 in the hope of reaping large profits therefrom.

The contract says they received $5,000 to be invested in the Aransas Pass townsite and farm lands. Suppose the venture had been a failure and they had not been able to more than pay expenses and for the land, and Stayner had sued for his $5,000, would he not have been met with the plea that he had invested his money with them and there was nothing left with which to pay him? And if he had sued for his $10,000 profits, and no profits had been made, would that not have been a complete defense to his demand? Burton & Danforth could have said that, "Under the contract you have no just claim, because we did not make any profits."

It is admitted that the profits were made on the Aransas Pass deal, and were paid by dock company stock and by the investment of $5,000 in the Falfurrias deal. This $5,000 so invested at Falfurrias, then, was legitimate capital invested for appellee, and we need not discuss whether this contract was

usurious, because only the principal was recovered, and no interest was paid on that.

[3] There is nothing in the contention that the debt, if valid, could not be recovered because not due, for the reason that the Falfurrias deal had not been closed; the land still being on hand. Appellants repudiated any interest appellee had in that matter and asserted that he had no interest whatsoever therein. They sold that land and afterwards took it back and received a good deal of property in the transaction in addition. But this we need not inquire into, because appellants denied that appellee had any interest in that deal whatsoever.

The judgment is affirmed.