Donald **SPICER** and wife Alice
Spicer, Appellant,

v.

**GREAT SERVICE, INC.,** Appellee.

No. 16142.

Court of Civil Appeals of Texas,
San Antonio.

March 7, 1979.

Robert I. Kahn, San Antonio, for appellant.

Forrest A. Bennett, Bennett & Leger, San Antonio, for appellee.

## OPINION

MURRAY, Justice.

Appellants, Donald and Alice Spicer, brought suit against Great Service, Inc., and Clyde Deckard under the Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.41, et seq. (Vernon Supp.1978–1979).[1] Clyde Deckard entered into a settlement agreement with appellants prior to trial. The case was tried before a jury, and at the conclusion of appellee's evidence the trial court granted an instructed verdict for defendant, Great Service, Inc. Appellants then perfected their appeal to this court.

This suit arose out of the transaction in which the Deckards sold their home to appellants. During the negotiations for the sale, appellants requested as a condition of the purchase that the plumbing and the heating and air conditioning systems be completely inspected. The realtor chose and paid Great Service, Inc., to make the inspection and file an inspection report. The inspection report stated, "The Carrier central air conditioning system and the Coleman central heating system are both in good working order." The inspection report, which was made on November 11, 1976, the day after the inspection, also stated that this report "represents the actual condition of the above equipment as of the date of this inspection and is not a warranty for future use of the equipment."

Appellants moved into the house on December 22, 1976, and in March 1977 the furnace became inoperable. Appellants then called County Wide Equipment Company, who replaced the furnace and heating system. As a result, appellants brought this action contending that the representation made by Great Service, Inc., in its inspection report was false, misleading, and deceptive because the furnace was not in good working order at the time of the inspection. Appellants alleged that Great Service, Inc., violated sections 17.46(a), (b)(7), and (b)(13) of the DTPA by engaging in false, misleading, and deceptive conduct. Appellants further alleged that appellee's conduct was unconscionable as defined by section 17.45(5) of the DTPA.

The only issue presented on appeal is whether there was any evidence of appellants' cause of action to raise a material fact issue for the jury's determination. The rule is well settled that it is error to instruct a verdict when the evidence raises any material fact issue. In passing upon the question of the authority of the trial court to instruct a verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. An instructed verdict is warranted only when the evidence shows that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. When there is any conflicting evidence, either direct or circumstantial, in the record of a probative nature, a determination of the issue is for the jury. *Texas Employers Insurance Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977); *Air Conditioning, Inc. v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422 (1952); *White v. White*, 141 Tex. 328, 172 S.W.2d 295 (1943); *Stevens v. Karr*, 119 Tex. 479, 33 S.W.2d 725 (1930). To make this determination, the trial court, without passing upon the credibility of the witnesses, must accept as true

---

1. All future references to statutory sections are to the Deceptive Trade Practices—Consumer Protection Act, hereinafter referred to as the DTPA.

all evidence which, when liberally construed in favor of the adverse party to the motion for instructed verdict, tends to support the adverse party's contention. The trial court must also indulge every reasonable inference deductible from the evidence in the adverse party's favor and disregard all contradictory evidence favorable to the movant. If this evidence amounts to more than a scintilla, a fact issue is raised. *Humphreys v. Haragan*, 476 S.W.2d 880 (Tex. Civ.App.—Amarillo 1972, no writ); 3 R. McDonald, Texas Civil Practice § 11.28.2 (1970).

In deciding this case, it is necessary to summarize the evidence in the light most favorable to appellants. Here, both Donald and Alice Spicer testified that when they first looked at the home in October 1976, they noticed a musty animal-like smell, which seemed to permeate the house. The odor was present before and after the inspection by Great Service, Inc., on November 10, 1976, and continued until the furnace and heating system were replaced in March 1977. Relying on the report of Great Service, Inc., that the furnace and heating system were in good working order, appellants did not at first attribute the odor to the heating system. During the first two months they owned the house, appellants repainted the interior of the house and replaced the rugs and cabinet tops in an effort to eliminate the odor. In January the Spicers noticed that the odor was strongest near the heating ducts, that the furnace seemed to be getting extraordinarily hot, and that the interior of the equipment closet, which housed the furnace, was discolored from excessive heat. In March appellants called in County Wide Equipment Company to inspect the heating system. As a result of this inspection, County Wide Equipment Company replaced the furnace and heating system which according to appellants' testimony constituted part of their damages. Appellants also testified that they would not have purchased the house at the price they did without the assurance that the heating system was in good working order.

Donald Lehr, sales manager for County Wide Equipment Company, testified that he had been in the same house during the winter of 1975–76 to give the Deckards an estimate on the cost of replacing their furnace. He testified that in March 1977 County Wide removed about two feet of wet, compacted bird nesting from the exhaust flue of the furnace and that additional nesting remained. He also testified that it would have taken longer than three months for the nesting to accumulate. The wet nesting, which emanated the animal-like odor, had clogged the exhaust flue and prevented the exhaust from completely escaping. This blockage caused the flue gases to back up and spread the animal-like odor throughout the house. In addition, the backup of these gases caused excessive heat to build up in the furnace which discolored the interior of the equipment closet. He further testified that a competent inspector would have noted this discoloration and continued the inspection to determine its cause.

Mr. Lehr further testified that the inside of the furnace was very badly rusted and that this amount of rust could not accumulate in three or four months. The excessive rusting was caused by water created from the condensation of improperly combusted gas. Mr. Lehr noted that a competent inspector should have been warned by the excessive rust. In addition, the furnace had been recently painted silver. From all of the above, Mr. Lehr concluded that the inspection was not properly conducted because all these conditions existed during appellee's inspection on November 10, 1977.

During appellee's motion for instructed verdict, the trial court, after reviewing Mr. Lehr's testimony with appellants' counsel in chambers, even stated "[there is] much more evidence for the plaintiff than what I have to determine in my own mind after hearing the entire case or matter." When there is some evidence regarding a fact issue, it is the peculiar province of the jury to find the facts of the case because the jury, not the court, is the fact finding body. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951).

We believe that the evidence in this case raises a fact issue on appellants' damages and on whether appellee's statement that the heating system was in good working order at the time of the inspection is false, misleading, or deceptive. Thus, the trial court erred in rendering an instructed verdict in this case.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded for a new trial.