Edward Joseph **DRYDEN, Jr.**, Appellant,

v.

**CITY NATIONAL BANK OF LAREDO**, Appellee.

No. 04–82–00299–CV.

Court of Appeals of Texas, San Antonio.

Jan. 4, 1984.

Rehearing Denied Feb. 3, 1984.

**214**

Emilio Davila, Jr., Laredo, for appellant.

Paul D. Gallego, Mann, Freed, Trevino & Hale, Laredo, for appellee.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

TIJERINA, Justice.

This law suit was brought by the City National Bank of Laredo to collect on two installment notes and one promissory note. Judgment was rendered in favor of appellee-bank based on an instructed verdict as to the promissory note and on the jury's answers to special issues on the two installment notes.

Appellees filed suit for payment of three notes, foreclosure on the property held as security, and attorney's fees. Appellant contended at trial, as on this appeal, that the notes sued upon were usurious. Appellant's claim is twofold: (1) that the promissory note was usurious because of a charge for a credit life insurance policy; and (2) that the two installment notes were usurious because appellee, by way of a written demand for full payment, including unearned interest, charged more interest than authorized by law. The trial court rendered an instructed verdict on the promissory note and submitted special issues to the jury on the two installment notes.

Appellee executed the following notes: (1) an installment note on July 5, 1978, for the purchase of a 1974 Jaguar in the total amount of $12,047.40 (hereinafter referred to as the car note); (2) an installment note on November 1, 1978, for the purchase of a 1978 Shasta Mini Motor Home in the total amount of $18,759.84 (hereinafter referred to as the motor home note); and (3) a promissory note on July 10, 1979, for the extension of the two prior notes in the total amount of $1,257.62 (hereinafter referred

to as the promissory note). Appellant was in default on all three notes, to which the appellee orally demanded full payment in December, 1979, and in a written demand letter on January 15, 1980, accelerated all three notes and demanded full payment, without credit for previous payments, including a demand for unearned interest. Appellee then filed suit on April 21, 1980. It was stipulated at trial that appellant executed all three notes and was in default on each note. On the promissory note, the trial court entered an instructed verdict denying appellant's claim of usury. The issue of usury on the two installment notes, the car note and the motor home note, was submitted to the jury on special issues. Based upon the jury's findings, favorable to appellee, the trial court rendered judgment for appellee. This appeal only concerns the issue of whether appellee contracted for, charged, or received more interest than allowed by law. TEX.REV. CIV.STAT.ANN. art. 5069–1.06 (Vernon 1971).

In its first point of error, appellant contends that the trial court erroneously entered an instructed verdict for appellee on the promissory note, arguing that the evidence raised several material fact issues as to whether appellee charged more interest than that authorized by law.

The rule is well settled that it is error to instruct a verdict when the evidence raises any material fact issue. In passing upon the question of the authority of the trial court to instruct a verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. An instructed verdict is warranted only when the evidence shows that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. When there is any conflicting evidence, either direct or circumstantial, in the record of a probative nature, a determination of the issue is for the jury. *Texas Employers' Insurance Association v. Page*, 553 S.W.2d 98, 102 (Tex.1977); *Spicer v. Great Service, Inc.*, 580 S.W.2d 14, 15 (Tex.Civ.App.

—San Antonio 1979, no writ). To make this determination, the trial court, without passing upon the credibility of the witnesses, must accept as true all evidence which, when liberally construed in favor of the adverse party to the motion for instructed verdict, tends to support the adverse party's contention. The trial court must also indulge every reasonable inference deductible from the evidence in the adverse party's favor and disregard all contradictory evidence favorable to the movant. If this evidence amounts to more than a scintilla, a fact issue is raised. *Spicer v. Great Service, Inc.*, 580 S.W.2d at 15–16; 3 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 11.28.2 (rev. 1983).

Appellant argues that a material issue of fact was raised during the trial as to whether $435.87 retained by appellee constituted an interest charge or constituted a retroactive charge for credit life insurance on the eight month old motor home loan. Appellant's contention is that if it is the former then appellee charged usurious interest on the $1,257.62 promissory note; if it is the latter, then the note is usurious for lack of a rebate on the credit life insurance charge.

Appellee argues that the record is void of any evidence of a probative nature that the $435.87 was anything else but proceeds borrowed to pay credit life insurance on the motor home note. Appellee relies on *Mitchell v. Schimming & Eddins*, 52 S.W.2d 1080 (Tex.Civ.App.—Waco 1932, no writ), for the proposition that a court may rule on the issue of usury as a matter of law when the evidence is insufficient to raise an issue of usury. *Mitchell* is distinguishable from the case at bar. In *Mitchell*, the defendant's plea of usury was based on the specific allegation that by the terms of the deed she was required to pay interest on the property one year before she purchased it; the evidence showed, without dispute, however, that no interest was ever claimed, demanded or received, and that there was an inadvertant mistake in the year stated in the deed. Appellee

also argues that execution of a subsequent note will never constitute payment of usurious interest being that the second note is distinct and separate ·from the original note, citing *Ware v. Paxton,* 266 S.W.2d 218 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.). The *Ware* case is not on point with the instant case. At issue in *Ware* was whether payment of usurious interest was made. The court stated that "[t]he payment contemplated by the statute is an actual payment and not a further promise to pay." *Id.* at 226. TEX.REV.CIV.STAT. ANN. art. 5073 (1925), the statute in effect at the time the *Ware* case was decided, has been superceded by TEX.REV.CIV.STAT. ANN. art. 5069–1.06 (Vernon 1971). Article 5069–1.06, *supra,* does not require "actual payment"; the *Ware* case is not controlling. Appellee also argues that a transaction which occurs after execution of a note does not constitute usury on the note, citing *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.,* 511 S.W.2d 724 (Tex.Civ.App.—Amarillo) *writ ref'd n.r.e. per curiam,* 516 S.W.2d 136 (Tex.1974).[1] The *Southwestern Investment Co.* case is factually different from the instant case; in that case there was no new indebtedness created, in the instant case the third note was executed to gain *extension* of the prior two notes.

This Court has held that if the original transaction is tainted with usury, that vice will follow the debt in whatever form it might assume. *Burton v. Stayner,* 182 S.W. 394, 395 (Tex.Civ.App.—San Antonio 1916, writ ref'd); *see Skeen v. Slavik,* 555 S.W.2d 516, 521 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). It is well settled that courts will look beyond the form of the transaction to its substance in determining the existence or non-existence of usury. *Gonzales County Savings & Loan Association v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976). Where there is a dispute in the evidence as to whether the charge is merely a device to conceal usury, a question of fact is raised for the jury. *Id.* at 906.

Further, when there is some evidence regarding a fact issue, it is the peculiar province of the jury to find the facts of the case because the jury, not the court, is the fact finding body. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951); *Spicer v. Great Service, Inc.,* 580 S.W.2d at 16.

In deciding this case, it is necessary to summarize the evidence in the light most favorable to appellants. The promissory note was executed for a total amount of $1,257.62. The proceeds of the promissory note were used in the following manner: (1) $821.75 was used to gain extension of two prior installment loans, the car note and the motor home note; and (2) $435.87 was used to purchase credit life insurance on the motor-home note. Appellant testified that he did not agree to purchase credit life insurance for the motor home loan. Appellant further testified that the appellee did not inform him until trial that the $435.87 was retained to purchase credit life insurance on the motor home loan. The record reflects that the promissory note was executed on July 10, 1979; that appellant filled out the credit life insurance application on that date; that the credit life insurance was on the motor home loan; that appellant was charged on July 10, 1979, for credit life insurance dated back to the date of indebtedness on the motor home loan on November 1, 1978. Appellee's witness, Mr. Solis, testified that appellee's ledger sheet reflected no rebate of any portion of the $435.87 credit life charge and that the rebate was not calculated until the day of trial.

It is well settled that usury, where not apparent from the face of the instrument, is a question of fact for the jury. *See Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709, 712 (Tex.1942). Whether a fee charge is interest or a service charge is also a question of fact for the jury. *Eckols v. Sabine Bank,* 613 S.W.2d 762, 763 (Tex. Civ.App.—Beaumont 1981, writ ref'd n.r.e.) (and citations therein). Likewise, whether a fee is one for interest or for some other

---

1. In *Tanner Development Co. v. Ferguson,* 561 S.W.2d 777, 787 (Tex.1977), the Supreme Court disapproved the holding in the *Southwestern Investment Co.* case.

type of fee is a question of fact for the jury. *Gonzales County Savings & Loan Association v. Freeman,* 534 S.W.2d at 906. In *Western Guaranty Loan Co. v. Dean,* 309 S.W.2d 857, 863 (Tex.Civ.App.— Dallas 1957, writ ref'd n.r.e.), the court upheld a jury finding that the lender charged the debtor for credit insurance policies as part of the usurious interest charges exacted by the lender.

 We find that the evidence in this case raises a fact issue as to whether appellee charged more interest than authorized by law. The trial court, therefore, erred in granting appellee's motion for instructed verdict on the promissory note. We sustain appellant's point of error number one.

By its third point of error appellant contends that the trial court erred in denying appellant's motion for instructed verdict on the two installment notes, since the evidence showed as a matter of law that appellee charged appellant all of the unearned interest on both notes. We print in full the written demand letters to show the factual basis of our holding. The written demand letters on the installment notes are as follows:

January 15, 1980

Mr. Edward Joseph Dryden, Jr.
P.O. Box 2728
Laredo, Texas 78040
Dear Mr. Dryden:

The City National Bank has brought to our attention the matter of past due payments under a retail installment contract dated July 5, 1978 in the principal amount of $12,047.40, under which you promised to pay on the 5th of each month for 36 months, beginning August 5, 1978. *Since inception of the contract, no payments have been made by you and there is now due and owing the full amount of $12,047.40, plus late charges.*

The Bank has instructed us to proceed to file suit against you in order to collect on the $12,047.40, plus late charges now due and owing under this retail installment contract. Along with the promissory note made in the retail installment contract, the Bank took as collateral one 1974 Jaguar, "E" Type Serial Number UE 1524716. Accordingly, the Bank intends to foreclose on such collateral as provided for in the retail installment contract. Additionally, the contract specifically provides that in the event it is placed in the hands of an attorney for collection or it is sued upon, that you promise to pay attorney's fees as part of your obligation. We are therefore herewith making demand that you should immediately discharge this obligation to the Bank. Should you fail to do so within ten (10) business days from date of this demand, we shall proceed to take further legal action to effect collection.

Sincerely,

SHIRLEY GUTIERREZ

SG/mg
xc: Mr. Abe Wilson
 The City National Bank
 Mann Road & IH 35
 Laredo, Texas 78040
(Emphasis added)

\* \* \* \* \* \*

January 15, 1980

Mr. Edward Joseph Dryden, Jr.
P.O. Box 2728
Laredo, Texas 78040
Dear Mr. Dryden:

The City National Bank has brought to our attention the matter of past due payments under a retail installment contract dated November 1, 1978, in the principal amount of $18,759.84, under which you promised to pay on the 5th of each month for 48 months, beginning December 5, 1978. *Since inception of the contract, no payments have been made by you and there is now due and owing the full amount of $18,759.84, plus late charges.*

The Bank has instructed us to proceed to file suit against you in order to collection on the $18,759.84, plus late charges now due and owing under this retail installment contract. Along with the promissory note made in the retail installment contract, the Bank took as col-

lateral one 1978 Shasta Mini Motor Home, Serial Number 3185-172363. Accordingly, the Bank intends to foreclose on such collateral as provided for in the retail installment contract. Additionally, the contract specifically provides that in the event it is placed in the hands of an attorney for collection or it is sued upon, that you promise to pay attorney's fees as part of your obligation. We are therefore herewith making demand that you should immediately discharge this obligation to the Bank. Should you fail to do so within ten (10) business days from the date of this demand, we shall proceed to take further legal action to effect collection.

> Sincerely,
> SHIRLEY GUTIERREZ

SG/mg

xc: Mr. Abe Wilson
 The City National Bank
 Mann Road & IH 35
 Laredo, Texas 78040

(Emphasis added)

Appellant argues that appellee accelerated the maturity date on both installment notes and demanded full payment, which included both earned and unearned interest. Appellant relies on *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.), for the proposition that an unequivocal demand for payment of both earned and unearned interest by a creditor constitutes charging as a matter of law under article 5069–1.06, *supra*. The record reflects that appellee made entries on their bank ledger sheets rebating the unearned interest to appellant; a rebate of $1,459.00 on the motor home loan on July 2, 1980, and a rebate of $143.89 on the Jaguar loan on February 24, 1981. Appellant contends that these interest rebates are insufficient as a matter of law to avoid the penalty provisions of the usury statute. Appellant further contends that a creditor is not allowed to accelerate maturity on an installment note without first rebating the unearned portion of the interest, citing *General Motors Acceptance Corp. v. Uresti*,

553 S.W.2d 660 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

Usury is the contracting for, charging or receiving of interest in an amount greater than that allowed by law. TEX.REV.CIV. STAT.ANN. art. 5069–1.06 (Vernon 1971). Appellant does not contend that appellee contracted for or collected usurious interest on the two installment loans; the issue before us is whether, by reason of the written demand for full payment, appellee *charged* usurious interest. Appellee relies upon a distinction in the facts of the instant case and *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.), to argue that a written demand in and of itself is not sufficient to constitute a charge. Appellee argues a distinction in the *Moore* case by pointing out that in *Moore*, the court looked at three items to evaluate a charging; namely, a written demand for full payment, an original petition for the same amount, and a writ of sequestration affidavit. Appellee contends, since the original petition alleged amounts due and owing, reflecting offsets and credits, and that rebates of unearned interest were given to appellant, that reasonable men could differ on whether the demand letter alone constituted a charging of usurious interest. We disagree with appellee.

■ Usury is neither a crime nor a tort in the ordinary sense. *See Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81, 86 (1953). Article 5069–1.06, *supra*, creates a statutory cause of action that is *sui generis*. *Williams v. Back*, 624 S.W.2d 272, 275 (Tex.App.—Austin 1981, no writ). When such an action is founded upon the creditor's charge of usurious interest, the actionable conduct is that of the creditor acting unilaterally and independently. In *Windhorst v. Adcock Pipe & Supply*, 547 S.W.2d 260 (Tex.1977) (per curiam), our Supreme Court of Texas stated: "By unilaterally charging the one and one-half percent per month 'finance charge,' the retailer in this case charged more than ten percent per annum, and is, therefore, liable for penalties." *Id.* at 261. What constitutes a

unilateral act of charging usurious interest?

In *Moore v. Sabine National Bank of Port Arthur,* 527 S.W.2d 209 (Tex.Civ.App. —Austin 1975, writ ref'd n.r.e.), the Austin Court determined that:

> ... a charge could be 'the debiting of an amount due or more certainly, an act by the promisee constituting or implying a demand for its payment, e.g., *the inclusion in a statement of indebtedness to the debtor.'*

*Id.* at 212 (citing *Monroe Loan Society of Pennsylvania v. Morello,* 160 Pa.Super. 418, 51 A.2d 347 (1947)).

In *Commercial Credit Corp. v. Chasteen,* 565 S.W.2d 342, 345 (Tex.Civ.App.— Fort Worth 1978, writ ref'd n.r.e.), the Fort Worth court held that the "notice of sale" letter mailed by the creditor to the debtor which included a demand for full payment without credit for payments made or unearned interest constituted a charging, citing *Moore v. Sabine National Bank of Port Arthur, supra.*

In *Hagar v. Williams,* 593 S.W.2d 783, 788–89 (Tex.Civ.App.—Amarillo 1979, no writ), the Amarillo court held that the creditor's unilateral action in entering a usurious amount of interest on a statement of account constituted the charging of usury within the meaning of the statute. The reasoning of the court was as follows:

> Logically, the debtor, without knowledge from some source of the interest charged to his account, would have no occasion to seek any recourse provided by the statute, but it does not follow that the mailing of a statement showing the interest charged and a demand for its payment are prerequisites for a charge of interest within the meaning of the statute. The statute itself does not require such notice and demand for payment of the interest charged. In *Windhorst,* the Court noted the Legislature made it clear that a charge of unlawful interest would trigger the statutory penalties and then imposed the sanction of the statute to a claim 'that the charging *alone* of excessive interest constitutes

usury (emphasis supplied).' *Windhorst v. Adcock Pipe & Supply, supra* at 260–61. The sense in which the term 'charges' is statutorily used and given effect in *Windhorst* is consistent with its applicable dictionary definition, to-wit: '13. To place something to the account of as a debt; to debit ... as, to charge a sum to one.' Webster's New International Dictionary (2d ed.). Resultantly, we are led to the holding that, contra to Williams' view, the term 'charges' as used in the statute means unilaterally placing on an account an amount due as interest.

*Id.* at 788.

In *Williams v. Back,* 624 S.W.2d 272, 276 (Tex.App.—Austin 1981, no writ), the Austin court held that the creditor by reason of an undelivered statement of account charged usury. The court reasoned:

> The word 'charges' used in the statute refers intrinsically to a unilateral action by the creditor or lender. The statute itself makes no requirement that the charge be actually communicated to the debtor. The statute is not ambiguous and we are required, therefore, to apply it literally. In addition, there exist other fundamental reasons which forbid our adoption of appellee's theory that there must be actual communication of the claim to the debtor.
>
> Article 5069–1.01, *et seq.,* is aimed at the regulation of business practices that the legislature concluded were unethical or undesirable. This regulation takes several forms. One method of regulation relied upon in the statute is that of providing a statutory cause of action in favor of individuals who have been the object of an unethical or undesirable business practice proscribed by the statute. In the case of borrowers and the purchasers of goods and services on credit, the legislature intended to protect them individually from excessive interest, but it intended also to curb such charges generally by providing the statutory cause of action as a means of policing the practice of assessing usurious

interest unilaterally, as well as by the debtor's assent. *See Declaration of Legislative Intent,* 15 TEX.REV.CIV. STAT.ANN. 1–2 (Vernon 1971). To engraft upon the statutory action the additional element of actual notice would, in effect, circumvent the regulatory purpose of the statute and the legislative intent behind it. Furthermore, when such statutory actions are created by the legislature, they are governed strictly by the statute of their creation. We are, therefore, not free to engraft upon the cause of action any additional elements that may appear to us to be wise or expedient. *Texas Employment Comm'n v. International Union of E., R. & M. Workers,* 163 Tex. 135, 352 S.W.2d 252 (1961). We are not free, for example, to engraft upon the statutory action claimed by appellant the additional element of actual receipt of notice that the creditor had entered upon his books of account, or other documents reflecting the particulars and status of the transaction, a usurious amount of interest.

*Id.* at 275–76. The court stated further:

We may not say … that the statement in question in this case did not, as a matter of law, constitute a charge of usury. And we may suggest that there is no inherent reason why a usurious demand or claim may not be contained in an invoice, a letter, a statement of account, a ledger sheet or other book or document. The basis of the action is a claim or demand for usury made by the creditor and the vehicle for the claim or demand is immaterial except, perhaps, as an evidentiary fact.

*Id.* at 276–77.

In *Nationwide Financial Corp. v. English,* 604 S.W.2d 458, 461 (Tex.Civ.App.— Tyler 1980, writ dism'd), the Tyler court held that the original counterclaim filed by the creditor, seeking to recover the entire balance of the account, including unearned interest, charged usury. Appellee argues that the *Moore* case should be distinguished from the instant case since there is no original petition for the same amount as

alleged in the demand letter, nor a writ of sequestration affidavit. A similar contention was rejected in the *English* case, where the Tyler court stated:

It is our view that Nationwide's action in amending its counterclaim so as to rebate the unearned time-price differential was not sufficient to nullify its prior violation of the Code. To allow the defendant, upon being faced with an action for penalties for overcharges, to escape liability by reducing the amount demanded to within permissible limits, would allow it to circumvent the statute. If a creditor is to be allowed to reduce the amount that he sues for after a usury claim has been asserted against him, then the penalty provided by the statute would be totally ineffective, since any violation and penalties could be erased simply by reduction of the amount sued for. *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.,* 516 S.W.2d 136, 137 (Tex.1974) (per curiam).

*Id.* at 461.

Although in the case at bar appellee's original petition alleged an amount due which gave credit for payments made and for unearned interest, thereby reducing the amount demanded to permissible limits, still we are faced with the creditor's unilateral act of charging usurious interest by way of written demand letters.

In *Rick Furniture Distributing Co., Inc. v. Kirlin,* 634 S.W.2d 738, 740 (Tex. App.—Dallas 1982, writ ref'd n.r.e.), the Dallas court held that the filing of the creditor's original petition demanding the payment of sums which included unearned time-price differential constituted a charging. In the *Kirlin* case the creditor had argued that the *Moore* and *English* cases should be distinguished since no demand was made on the debtor in the form of a notice of intention to repossess or a sequestration affidavit, reasoning that any overcharge was corrected by their first amended original petition. The court rejected this by stating:

We decline Rick Furniture's invitation to limit the holdings in *Moore* and *English* to those situations where a creditor makes some overt act, outside the legal process, to effect the collection of unearned interest. Such a course is inconsistent with the policies underlying the Consumer Credit Code and we refuse to deviate from the emerging line of authority maximizing consumer protection under the Act.

*Id.* at 740.

We decline appellee's request to limit the holding in *Moore.* Accordingly, we hold that the written demand letters demanding full payment, which included a demand for payments already made and unearned interest, constituted a charging in violation of article 5069–1.06 (Vernon 1971).

We find support for our holding in *Tanner Development Co. v. Ferguson,* 561 S.W.2d 777 (Tex.1977). In *Tanner,* the debtor argued that the creditor had charged usurious interest in the attempted acceleration and foreclosure of the note. Specifically, the debtor contended that a letter demanding "the full unpaid principal balance" was a charging in violation of article 5069–1.06, *supra,* citing *Windhorst v. Adcock Pipe & Supply, supra,* and *Moore v. Sabine National Bank of Port Arthur, supra.* In overruling the debtor's argument the Supreme Court reasoned:

> The foregoing cases (*Windhorst* and *Moore*) are the only ones cited by Ferguson in support of his contention that Tanner's letters and notice amounted to a "charging" of usurious interest. Both are distinguishable from the facts of this case. The letters to Ferguson on behalf of Tanner refer only to a claim for the "full unpaid principal *balance*," and "the full principal *balance*," respectively. (Emphasis supplied.) Neither they nor the notice demand payment of the full face amount of the note. Rather, the use of the term "principal balance" in the letters implies a demand for something less than the full face amount of the note. We construe the letters as refer-

ring to whatever balance was due on the principal after applying all payments and credits under the terms of the note. One of the terms was that any unearned interest payments shall be credited on the principal, and that is what Tanner did in arriving at the first and only dollar amount demanded of Ferguson. Since Tanner *neither demanded nor sued* for any interest in excess of ten percent per annum during the period of forbearance, we agree with the conclusion of the trial court that Tanner *did not charge* Ferguson any interest in excess of the amount permitted by law.

*Id.* at 788–89 (On Motion for Rehearing). (Emphasis added.) In the case at bar the written demand letters state that *"no payments have been made by you and there is now due and owing the full amount."* (Emphasis added.) The written demand letters in this case, therefore, not only demanded the "full unpaid principal balance," but, by failing to give credit for payments made, demanded amounts in excess of the "full unpaid principal balance." Although appellee *did not sue* for any interest in excess of that authorized by law, nonetheless, it *did demand* interest in violation of article 5069–1.06, *supra.* We, therefore, hold that the written demand letters demanding full payment, which included a demand for payments already made and unearned interest, constituted a charging in violation of article 5069–1.06 (Vernon 1971). *See Tanner Development Co. v. Ferguson, supra* at 788–89; *Windhorst v. Adcock Pipe & Supply, supra* at 261. We sustain point of error number three.

Appellant presented four points of error, of which we sustained points one and three. In point of error two, appellant contends that the trial court erred by instructing the jury that the maximum interest allowed by law is 8% add on per annum "for the full term of the contract." In point of error four, appellant contends that the trial court erred in denying his motion for new trial because there was insufficient evidence to support the finding of the jury on special issues three and five. Our disposition of

the case on points one and three, however, obviates the necessity of addressing points of error two and four.

Having held that the written demand letter is a charging of interest, the inquiry turns to whether the interest charged is allowed under TEX.REV.CIV.STAT.ANN. art. 5069–4.01 (Vernon Supp.1982–1983). The written demand letter on the car note dated January 15, 1980, made demand for the full amount of $12,047.40, with no credit for payments made. The record reflects that appellant's expert witness testified that based upon the demand for the full amount, with no credit for payments made or for unearned interest, and the date of acceleration, the bank charged the rate of 31.04% add-on interest per annum. The written demand letter on the motor home note, dated January 15, 1980, made demand for the full amount of $18,759.84, with no credit for payments made. The expert witness testified that based upon the demand for the full amount, with no credit for payments made or for unearned interest, and the date of acceleration the bank charged the rate of 37.76% add-on interest per annum.

Consequently, City National Bank of Laredo is subject to the penalties prescribed by article 5069–1.06(1) and (2),[2] to-wit: on the car note, twice the amount of interest charged ($1,837.78 × 2 = $3,675.56), forfeiture of all principal as well as interest charged and all other charges ($10,209.62 + $1,837.78 + $229.13 = $12,276.53), and reasonable attorney fees set by the trial court; on the motor home note, twice the amount of interest charged ($3,759.84 × 2 = $7,519.68), forfeiture of all principal as well as interest charged and all other charges ($15,000.00 + $3,759.84 = $18,759.84), and reasonable attorney fees set by the trial court.

Accordingly, the judgment of the trial court is reversed. The cause is remanded for a new trial on the promissory note. On the two installment notes the cause is re-manded to the trial court with instructions to render judgment decreeing that: City National Bank of Laredo forfeit all principal, interest charges and late charges on the two installment notes and take nothing by its action; and Edward Joseph Dryden, Jr., do have and recover of City National Bank of Laredo, the sum of $11,195.24, together with the amount of reasonable attorney fees to be determined by the trial court.

---

**2.** Appellee raises no argument on appeal that its actions resulted from an accidental and *bona fide* error. *See Hagar v. Williams, supra* at 789

n. 8; *see also Tri-County Farmer's Co-op v. Bendele,* 641 S.W.2d 208, 209–10 (Tex.1982).